PRESENT: All the Justices

GINA COUTLAKIS, PERSONAL REPRESENTATIVE OF JAMES COUTLAKIS,
DECEASED, AND EXECUTOR OF HIS ESTATE,

                                         OPINION BY

v. Record No. 160277                     JUSTICE CLEO E. POWELL
                                       March 9, 2017

CSX TRANSPORTATION, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge Designate

Gina Coutlakis ("Gina") appeals the judgment of the trial court sustaining a demurrer on

the basis that her action was barred because her husband, James Coutlakis ("James"), was

contributorily negligent.

## I. BACKGROUND

As the present case was decided on demurrer, "we recite the facts contained in the

pleadings and all reasonable inferences therefrom in the light most favorable to the plaintiff."

*Martin v. Ziherl*, 269 Va. 35, 38, 607 S.E.2d 367, 368 (2005). So viewed, the record

demonstrates that, on September 4, 2015, Gina filed her third amended complaint against CSX

Transportation, Inc. ("CSX"), Brian Crowder ("Crowder"), and Daniel Epstein ("Epstein")

(collectively the "Appellees"), alleging that their negligence resulted in the death of James. In

her complaint, Gina alleged that, on July 6, 2013, James was walking adjacent to railroad tracks

owned by CSX. At the time, James was listening to music on his cellular telephone through

earbuds. As a result, James was unaware of the fact that a CSX train was approaching him from

behind.

Gina further alleged that Crowder, the train's conductor, and Epstein, the train's engineer,

had a chance to avoid the accident, as they saw James while he was several hundred yards in

front of the train. However, as James continued to walk along the tracks, showing no sign that

he was aware of the approaching train, neither Crowder nor Epstein took any steps to alert James or avoid a collision.  James was subsequently "struck by a part of the train that extended out from the side of the body of the [t]rain which caused severe injuries to his head and . . . shoulder," killing him immediately.

CSX, Crowder and Epstein collectively demurred, arguing that, even when viewed in the light most favorable to Gina, James's contributory negligence was evident on the face of the complaint and, therefore, Gina's claim was barred.  The defendants further asserted that Gina's reliance on the last clear chance doctrine was misplaced, because James's negligence was ongoing at the time he was struck.  After hearing argument on the matter, the trial court sustained the demurrer.

Gina appeals.

## II.  ANALYSIS

On appeal, Gina argues that the trial court erred in sustaining the Appellees' demurrer.  According to Gina, her third amended complaint contained sufficient facts to support her allegation that the last clear chance doctrine may apply to the present case and, therefore, James's contributory negligence did not require dismissal of her complaint.  We agree.

> The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted.  A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof.  Accordingly, we accept as true all properly pled facts and all inferences fairly drawn from those facts.  Because the decision whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo.

*Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 356-57, 699 S.E.2d 483, 486-87 (2010) (citations and internal quotation marks omitted).

2

At present, this Court has only recognized two types of plaintiff who may avail themselves of the last clear chance doctrine. The first type of plaintiff, the helpless plaintiff, is a plaintiff who "negligently placed himself in a situation of peril from which he is physically unable to remove himself." *Greear v. Noland Co.*, 197 Va. 233, 238, 89 S.E.2d 49, 53 (1955). In the case of a helpless plaintiff, "the defendant is liable if he saw, or should have seen, [the plaintiff] in time to avert the accident by using reasonable care." *Id.*

The present case deals with the second type of plaintiff, the inattentive plaintiff. An inattentive plaintiff is one who "has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril." *Id.* at 238-39, 89 S.E.2d at 53. In the case of an inattentive plaintiff, "the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, [the plaintiff's] peril in time to avert the accident by using reasonable care." *Id.* at 239, 89 S.E.2d at 53.

There can be little doubt that, under *Greear*, Gina's third amended complaint contains sufficient allegations to survive demurrer.[1] Notably, Gina alleged that James was unaware of his peril[2], that Crowder and Epstein saw James, that Crowder and Epstein knew or should have

---

[1] Indeed, one would be hard pressed to distinguish the facts of *Greear* from the facts pled by Gina in her third amended complaint. In both cases, it was alleged that the injured parties negligently placed themselves in a position of danger by positioning themselves in a location where they could be struck by a passing truck (*Greear*) or a train (present case); they were physically capable of removing themselves from harm's way, but they were unconscious of their peril; the defendants saw the injured parties and realized or should have realized the peril; and the defendants had time to avert the accident using reasonable care.

[2] The Appellees dispute this point, arguing that the inherent danger of railroad tracks establish that James was aware of his peril as a matter of law. In raising this argument, however, the Appellees rely on cases that are factually inapposite from the present case. Notably, all of the cases cited by the Appellees involve individuals who are either crossing or standing on railroad tracks at the time that they are struck. The Appellees fail to cite to any case stating that the inherent danger of railroad tracks extends beyond the tracks themselves and, if so, how far this danger zone extends.

known that James was in peril, and that Crowder and Epstein had sufficient time to take action to avoid the accident, had they used reasonable care.

The Appellees, however, argue that neither *Greear* nor the last clear chance doctrine applies to the present case because James's negligence continued up to the point of the accident, thereby making it a proximate cause of his injuries. In making this argument, the Appellees note that, prior to *Greear*, this Court recognized that the last clear chance doctrine had "no application to a case where both parties are equally guilty of neglect of an identical duty, the consequences of which continue on the part of both to the moment of the injury and proximately contribute thereto." *Roanoke Ry. & Elec. Co. v. Carroll*, 112 Va. 598, 604, 72 S.E. 125, 128 (1911). *See also Harris Motor Lines, Inc. v. Green*, 184 Va. 984, 991, 37 S.E.2d 4, 6 (1946) ("[W]here two people are both guilty of continuous acts of negligence down to the time of the accident, the doctrine of the last clear chance does not apply; otherwise there would be nothing left of the law of contributory or concurring negligence."). The Appellees assert that *Greear* did not expressly overrule the line of cases addressing this continuing negligence rule. Indeed, they assert this Court's repeated admonishment that "the last clear chance doctrine does not supersede the principle of contributory negligence, meaning negligence on the part of the injured person which contributed as a proximate cause to his injury," *Greear*, 197 Va. at 237-38, 89 S.E.2d at 52-53, is a tacit acknowledgement that the continuing negligence rule was unaffected by *Greear*. They

It is further worth noting that we do not presently know how close to the tracks James was when he was struck. The third amended complaint alleges that James was walking adjacent to the railroad tracks. Additionally, it alleges that he was not so close to the tracks that he was struck by the train itself, given Gina's allegation that James was struck by "a part of the Train that *extended out from the side of the body of the Train*." (Emphasis added.) Thus, even if the Appellees could cite to any jurisprudence indicating the existence of a "zone of danger" that extends beyond the railroad tracks, it would likely still be premature to grant demurrer, as we do not know how close James actually was to the track or how far out from the train the part that struck him protruded.

further note that this Court continues to recognize that "[a] negligent plaintiff may recover only if his negligence was a remote rather than a proximate cause of the accident." *Williams v. Harrison*, 255 Va. 272, 276-77, 497 S.E.2d 467, 470 (1998). We disagree with the Appellees.

The last clear chance doctrine "means precisely what the name implies -- that is, that one of the litigants had a last clear chance to avoid inflicting the damage or injury, notwithstanding the fact that the other litigant had previously, by his negligence, placed himself in a situation of peril." *Eisenhower v. Jeter*, 205 Va. 159, 163, 135 S.E.2d 786, 788-89 (1964). In *Greear*, the Court acknowledged that there were two existing approaches to the application of the last clear chance doctrine. The first approach, referred to as the contributory negligence approach, focused on whether the plaintiff's contributory negligence was ongoing and, therefore, a proximate cause of the accident. *Greear*, 197 Va. at 238, 89 S.E.2d at 53 (citing *Anderson v. Payne*, 189 Va. 712, 54 S.E.2d 82 (1949)). This approach is akin to the continuing negligence rule espoused by the Appellees. The second approach is more akin to the approach advanced by Gina, as it focused on whether the defendant "saw [the plaintiff] and realized, or should have realized, his situation of peril in time to avert the accident." *Id.* (citing *Lanier v. Johnson*, 190 Va. 1, 55 S.E.2d 442 (1949)). Addressing these two approaches, the Court noted that "the contributory negligence approach does not provide a guide for applying it in the case of the plaintiff who is not helpless but only unconscious of his situation." *Id.* Although the Court did not explicitly overrule either approach, it explained that, "[i]n the hope of affording a more precise method of applying the last clear chance doctrine," it was adopting a new rule:

> Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious

5

of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care.

*Id.* at 238-39, 89 S.E.2d at 53.

The significance of this new rule is highlighted by the fact that, in the years since *Greear*, this Court has not once ruled that a plaintiff's continuing negligence alone bars the application of the last clear chance doctrine. Since *Greear*, there have only been two cases involving the last clear chance doctrine where this Court has even mentioned a plaintiff's continuing negligence. *See Cook v. Shoulder*, 200 Va. 281, 105 S.E.2d 860 (1958); *Brown v. Vinson*, 198 Va. 495, 95 S.E.2d 138 (1956). Notably, both cases turned on the fact that the defendant had no clear opportunity to avoid the accident and not, as the Appellees insist, on the fact that the plaintiffs' negligence continued up to the point of the accident. *Cook*, 200 Va. at 286, 105 S.E.2d at 863; *Brown*, 198 Va. at 499, 95 S.E.2d at 141. Indeed, in both cases, our discussion of the plaintiffs' continuing negligence could, at best, be described as a passing reference.[3]

The reason a plaintiff's continuing negligence does not bar the application of the last clear chance doctrine is because

> The doctrine of last clear chance presupposes a situation where there is negligence on the part of defendant and contributory negligence on the part of plaintiff, which upon ordinary and purely legalistic principles would result in a finding in favor of defendant. However, for humane considerations and to avoid that harsh and inevitable result, the law permits two types of plaintiffs to recover, notwithstanding their negligence, if, and only if, certain circumstances exist.

*Jones v. Aluminum Window & Door Corp.*, 201 Va. 283, 290, 110 S.E.2d 531, 536 (1959).

---

[3] We reached a similar conclusion in *Norfolk & W. Ry. Co. v. Hagy*, 201 Va. 183, 191, 110 S.E.2d 177, 183 (1959). Although we did not explicitly mention the nature of the plaintiff's contributory negligence in *Hagy*, the facts of that case clearly demonstrate that the plaintiff's contributory negligence was, in fact, continuing at the time of the accident. Notwithstanding the continuing nature of the negligence, the Court held that the plaintiff's case "may be saved by the application of the doctrine of last clear chance." *Id.* at 191, 110 S.E.2d at 183.

Also, the doctrine is merely the application of another, well established principle of law: that a defendant's negligence can be an efficient intervening cause of an accident which renders a plaintiff's contributory negligence remote. *See Southern Ry. Co. v. Bailey*, 110 Va. 833, 845, 67 S.E. 365, 396 (1910) (collecting cases on the last clear chance doctrine and discussing intervening causation); *Gunter v. Southern Ry. Co.*, 126 Va. 565, 575, 101 S.E. 885, 887 (1920) (same).

> [W]here the negligence of the defendant is the proximate cause of the injury, and that of the plaintiff only the remote cause, the plaintiff may recover, notwithstanding his negligence; the doctrine in that respect being that the law regards the immediate or proximate cause which directly produces the injury, and not the remote cause which may have antecedently contributed to it. From that principle arises the well-established exception to the general rule that if, after the defendant knew, or, in the exercise of ordinary care, ought to have known, of the negligence of the plaintiff, it could have avoided the accident, but failed to do so, the plaintiff can recover. In such case the subsequent negligence of the defendant in failing to exercise ordinary care to avoid injuring the plaintiff becomes the immediate or proximate and efficient cause of the accident, which intervenes between the accident and the more remote negligence of the plaintiff.

*Bailey*, 110 Va. at 845, 67 S.E. at 369.

In *Bailey*, this Court explained the application of the last clear chance doctrine in a manner that is particularly apropos to the present case.

> If it be the duty of a person upon the track of a railway to keep a constant lookout for approaching trains . . . and if it be the duty of the servants of the company in control of the train to exercise reasonable care to discover the presence of a person upon the track, and if in the exercise of such reasonable care the presence of such person would be discovered, and the person on the track is injured and there be no other fact proved, then it is apparent that the case stated would be one of mutual and concurring negligence, and there can be no recovery. The duty was equal and each is equally guilty of its breach. If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover . . . a person upon the track, *and there be superadded any fact or circumstance brought home to their*

7

> *knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety*, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery.

*Id.* at 846, 67 S.E. at 370 (emphasis added).

An examination of this Court's jurisprudence leads to the conclusion that the continuing nature of a plaintiff's contributory negligence does not automatically bar the application of the last clear chance doctrine. Rather, once a plaintiff's contributory negligence is established, the application of the doctrine turns first on whether the defendant was also negligent and then on a determination of which party, if any, had the last clear chance to avoid the accident, as the name implies. Thus, contrary to the Appellees' argument, the fact that James's negligence continued up to the point of the accident, without more, does not bar the application of the last clear chance doctrine.

The Appellees further claim that James acted with willful and wanton negligence and, therefore, the last clear chance doctrine should not apply in the present case. We note, however, that the issue of whether James's negligence was willful and wanton is a question of fact upon which reasonable persons could disagree. *See Huffman v. Love*, 245 Va. 311, 314, 427 S.E.2d 357, 360 (1993) ("If reasonable persons, upon the facts presented, could differ regarding whether [the conduct at issue] was so willful or wanton as to show a conscious disregard of the rights of others, a jury question is presented."). Therefore, given the present posture of the case, any determination regarding the nature of James's negligence is premature. Accordingly, we will decline the Appellees' invitation to rule on the matter at this time.

8

## III. CONCLUSION

Gina's third amended complaint alleged sufficient facts which, if proven at trial, may support a verdict in her favor. Therefore, because a rational jury could conclude the last clear chance doctrine applies based upon the facts pled and any reasonable inferences therefrom, the trial court erred in sustaining the demurrer. Accordingly, we will reverse the decision of the trial court and we will remand the matter to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE McCLANAHAN, concurring.

I agree that the third amended complaint contains sufficient allegations to survive the demurrer. I also agree that the trial court erred in dismissing the third amended complaint because, as the Court concludes, "the continuing nature of a plaintiff's contributory negligence does not automatically bar the application of the last clear chance doctrine."

I write separately to emphasize that at trial, Gina will bear the burden of presenting sufficient evidence of each element of the last clear chance doctrine to require a jury instruction on last clear chance. *Williams v. Harrison*, 255 Va. 272, 277, 497 S.E.2d 467, 470 (1998). In over 50 years, "we have declined to require the application of the [last clear chance] doctrine" in those cases where plaintiffs have failed to prove the necessary elements. *See id.* In fact, since we clarified the last clear chance doctrine in *Greear v. Noland Co.*, 197 Va. 233, 237-39, 89 S.E.2d 49, 52-53 (1955), we have not required application of the last clear chance doctrine to an "inattentive" victim. Furthermore, although we have held that a victim is not legally "helpless" within the meaning of the last clear chance doctrine when the evidence at trial established that the physical incapacity was produced by voluntarily induced

9

intoxication, *Pack v. Doe*, 236 Va. 323, 329-30, 374 S.E.2d 22, 25-26 (1988), we have not had occasion to consider whether a similar exception would apply if the evidence at trial established that a victim's inattentiveness was produced by voluntary obstruction of his senses.