PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Russell and Millette, S.JJ.

STAN SEYMOUR, ET AL.

v.  Record No. 210721

OPINION BY
JUSTICE TERESA M. CHAFIN
JUNE 9, 2022

ROANOKE COUNTY
BOARD OF SUPERVISORS, ET AL.

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

In their second amended complaint, the appellants challenged a locality's decision to grant a special use permit to a wildlife rehabilitation center. The appellants alleged that the decision to grant the special use permit would cause an increase in traffic on a private easement, which they claimed would harm them in several ways. The Circuit Court of Roanoke County sustained the appellees' demurrer and dismissed the appellants' second amended complaint with prejudice, concluding that the appellants lacked standing to pursue their claims. For the following reasons, we will reverse the circuit court's judgment and remand this case for further proceedings.

I.  BACKGROUND

The Southwest Virginia Wildlife Center of Roanoke, Inc. (the "SVWC") provides medical and rehabilitative care to over 2,000 animals each year. The SVWC is located at the end of a shared private easement. This easement is approximately 476 feet long, and it traverses properties that are owned by Adrian Maver and Blaine Creasy, and Seymour2, LLC ("Seymour2"). The SVWC, Maver and Creasy, and Seymour2 properties can only be accessed by the easement.

The easement is an unpaved, "single-lane dirt driveway" that "crosses over the front-lawns" of the Maver and Creasy and Seymour2 properties. Maver and Creasy's house is located within "two car lengths" of the easement. Significantly, the easement is not maintained by any governmental entity.

On March 9, 2018, the SVWC filed an application for a special use permit that would authorize the construction of a large "raptor building" on the SVWC property. The SVWC planned to use the raptor building to rehabilitate birds of prey. In their special use permit application, the SVWC explained that the raptor building would allow injured birds of prey to recover more quickly.

During the permit review process, the Roanoke County Zoning Administrator addressed 12 "accessory structures" located on the SVWC property. The SVWC uses these structures to house small animals and birds. The Zoning Administrator determined that the accessory structures "were either improperly granted zoning permits or had not been granted permits at all." Therefore, the Zoning Administrator concluded that these structures would also need to be addressed by the pending special use permit.

The Roanoke County Board of Supervisors eventually granted a special use permit to the SVWC. The special use permit retroactively authorized the accessory structures at issue.[1] The special use permit also authorized the construction of the raptor building. The Board of Supervisors, however, required the SVWC to: (1) plant two rows of evergreen trees around the

---

[1] The ordinance granting the special use permit did not expressly reference the accessory structures on the SVWC property. Nevertheless, the Board of Supervisors has adopted the position that the special use permit retroactively authorized these structures. For the purposes of this appeal, which concerns the sufficiency of the appellants' allegations regarding standing, we will assume without deciding that the special use permit encompassed the accessory structures at issue.

raptor building, (2) construct the raptor building an additional 20 feet away from the edge of its property, and (3) use certain materials (i.e., wood rather than sheet metal) when constructing the raptor building.

Maver, Creasy, Seymour2, and Stan and Jane Seymour, the owners of Seymour2 and another property located near the SVWC, (collectively the "appellants") filed a complaint in the circuit court that challenged the Board of Supervisors' decision on several grounds. The complaint named the Board of Supervisors, the SVWC, and 5985 Coleman Road, LLC, the owner of the SVWC property, (collectively the "appellees") as defendants.

The appellees filed demurrers to the appellants' complaint. Among other things, the appellees argued that the appellants lacked standing to pursue their claims. The appellees maintained that the allegations of the complaint failed to establish that the appellants had standing under the two-part test set forth in *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38 (2013). The circuit court agreed with the appellees and sustained the demurrers.

With leave from the circuit court, the appellants filed an amended complaint that set forth more detailed allegations of the harm arising from the proposed expansion of the SVWC. As the appellants had previously filed an amended complaint when Seymour2 was joined as a party to the litigation, the appellants referred to their new complaint as the "second amended complaint."

In the second amended complaint, the appellants explained that traffic on the easement has increased "20- to 50-fold" since the SVWC began operating in 2014. The appellants claimed that there were "around 55 car trips per day" over the easement in the summer of 2018. The second amended complaint alleged that the traffic on the easement causes "congestion, noise,

dust, and light pollution." The complaint also explained how each of the appellants has been harmed by the traffic on the easement and the resulting conditions.

The complaint alleged that dust from the traffic requires Maver and Creasy to replace the air filters in their home "three-times more often than is recommended" and "have their home and deck power-washed more frequently than would otherwise be necessary." The complaint also claimed that dust from the traffic contributed to several of Creasy's asthma attacks. The complaint further asserted that noise and light from the traffic wake Maver and Creasy up at night.

Moreover, the complaint alleged that the traffic on the easement poses a danger to Maver and Creasy's children. The complaint explained that Maver and Creasy's children have to walk along the easement in order to get to their school bus stop. The complaint claimed that the children were almost hit by "speeding" traffic on the easement on several occasions.

The complaint also asserted that Maver, Creasy, and Seymour2 have incurred additional maintenance expenses due to the traffic on the easement. The complaint alleged that traffic going to and from the SVWC has damaged the easement. The complaint explained that Maver, Creasy, and Seymour2 have been required to replace gravel on the easement that has been "displaced" by the traffic.

Furthermore, the complaint claimed that the traffic on the easement has lowered both the fair market and rental value of the Seymour2 property. The complaint observed that the Seymours sold the Seymour2 property to a third party a "few years earlier." The complaint then alleged that the Seymours were able to repurchase the property in 2017 for a reduced price due to the ongoing operation of the SVWC and the traffic on the easement. The complaint also

4

explained that the conditions caused by the traffic have made the Seymour2 property more difficult to rent.

The complaint noted that the Seymours live near the SVWC, in the "last house on the state-maintained road" leading to the easement at issue. Although the complaint acknowledged that the Seymours' home is not located on the easement itself, the complaint observed that "all traffic to and from the SVWC Property must pass the Seymours' home." The complaint alleged that people often stop at the Seymours' house to ask for directions to the SVWC, leading to "increased traffic congestion, noise, dust, and light pollution" on their property.

The appellants observed that the special use permit authorized the SVWC to construct a new raptor building on its property. The appellants argued that this expansion would reasonably lead to more traffic on the easement. Furthermore, the appellants noted that the special use permit retroactively approved the existing accessory structures on the SVWC property. Thus, the appellants maintained that the special use permit would, at a minimum, perpetuate the present amount of traffic on the easement.

Based on these allegations, the appellants argued that the Board of Supervisors' decision to grant the special use permit would cause the appellants to continue to suffer several forms of "particularized" harm. The appellants emphasized that they would incur this harm due to their proximity to the easement at issue. Therefore, the appellants claimed that members of the general public would not be harmed in a similar manner. For these reasons, the appellants maintained that they had standing to challenge the decision at issue under *Friends of the Rappahannock*.

The appellees filed a joint demurrer to the appellants' second amended complaint. Again, the appellees argued that the appellants' allegations failed to establish that the appellants had standing to pursue their claims.

Upon review, the circuit court sustained the appellees' demurrer. The circuit court determined that the allegations of the second amended complaint failed to establish that the appellants incurred any form of "particularized harm" arising from the issuance of the special use permit. Therefore, the circuit court concluded that the appellants had not satisfied the second prong of the test articulated in *Friends of the Rappahannock*.

The circuit court explained that the second amended complaint failed "to identify how traffic will be affected by the Board's approval of the construction of the buildings[,] including the proposed [raptor building]." The circuit court found that the appellants only presented "conclusory allegations" regarding the harm that potentially may be caused by the decision at issue.

Furthermore, the circuit court determined that the second amended complaint failed to provide any "factual background" that would allow the circuit court to infer that the manner in which the SVWC planned to use its property would harm the appellants. The circuit court explained that any such inference would be "based on guess work and speculation." The circuit court also noted that the appellants' "generic" allegations of harm were similar to the those that were rejected in *Friends of the Rappahannock*.

The appellants filed a motion for reconsideration in response to the circuit court's decision. In their motion, the appellants emphasized that the alleged harm in this case was tied to the Board of Supervisors' decision to grant a special use permit that: (1) authorized the SVWC to construct the raptor building, and (2) retroactively approved the existing accessory structures

on the SVWC property. The appellants argued that the allegations of the second amended complaint referenced several forms of "non-speculative particularized harm that [the appellants] have already suffered due to the construction of the existing accessory structures encompassed by the [special use permit]." The appellants stressed that these harms were "actual—not speculative."

The circuit court denied the motion for reconsideration and entered a final order that sustained the appellees' demurrer and dismissed the appellants' second amended complaint with prejudice. This appeal followed.

## II. ANALYSIS

The appellants contend that the circuit court erred when it sustained the appellees' demurrer on the basis of standing. More specifically, the appellants argue that the allegations set forth in the second amended complaint are sufficient to meet the test for standing articulated in *Friends of the Rappahannock*.

The legal standards that apply in this appellate scenario are well established. We review a circuit court's judgment sustaining a demurrer de novo. *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 356-57 (2010)). When reviewing such a judgment, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor. *Id.*; *Coutlakis*, 293 Va. at 216.

"The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts

7

alleged in pleadings, not the strength of proof." *Coutlakis*, 293 Va. at 216 (quoting *Abi-Najm*, 280 Va. at 356-57). A circuit court "is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a . . . complaint." *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427 (2000). Rather, the circuit court's duty is to "determine whether the factual allegations of the . . . complaint are sufficient to state a cause of action." *Id.*

In *Friends of the Rappahannock*, the Court established a two-prong test for determining whether certain plaintiffs have standing to challenge a locality's land use decision. 286 Va. at 48. This test applies when a plaintiff does not claim an ownership interest in the property that is the subject of the challenged decision. *Id.* In order for a plaintiff to have standing to challenge a land use decision in this context, it must satisfy the following two requirements:

> First, the [plaintiff] must own or occupy "real property within or in close proximity to the property that is the subject of" the land use determination, thus establishing that it has "a direct, immediate, pecuniary, and substantial interest in the decision." *Virginia Beach Beautification Comm'n v. Board of Zoning Appeals*, 231 Va. 415, 420 (1986).

> Second, the [plaintiff] must allege facts demonstrating a particularized harm to "some personal or property right, legal or equitable, or imposition of a burden or obligation upon the [plaintiff] different from that suffered by the public generally." *Virginia Marine Res. Comm'n v. Clark*, 281 Va. 679, 687 (2011).

*Id.* "Absent an allegation of injury or potential injury not shared by the general public, [plaintiffs] have not established standing to bring a declaratory judgment action in a land use case." *Id.*

The appellees do not dispute that the allegations of the appellants' second amended complaint satisfied the first prong of the *Friends of the Rappahannock* test. Accordingly, our analysis focuses on the second prong of the test.

8

Viewing the allegations of the second amended complaint in the light most favorable to the appellants, we conclude that the appellants' allegations of harm satisfied the second prong of the *Friends of the Rappahannock* test. The allegations of the second amended complaint, when taken as true, establish that the appellants have incurred, and will continue to incur, several forms of particularized harm arising from the Board of Supervisors' decision to grant the special use permit at issue.

As noted by the appellants, the special use permit: (1) allowed the SVWC to construct a new raptor building on its property, and (2) retroactively authorized the existing accessory structures on the SVWC property. Based on the allegations of the second amended complaint, the circuit court should have reasonably inferred that the special use permit would lead to increased traffic on the easement.

The special use permit application filed by the SVWC, which was attached as an exhibit to the appellants' second amended complaint,[2] indicated that the raptor building would allow the SVWC to provide better rehabilitative care for birds of prey. Significantly, the permit application explained that the raptor building would allow injured birds of prey to recover more quickly. Thus, the SVWC would be able to care for more birds of prey after the raptor building was constructed.

Drawing all reasonable inferences in favor of the appellants—as is required at the demurrer stage of these proceedings—the averments of the second amended complaint were sufficient to allege that the construction of the raptor building, and the corresponding expansion

---

[2] "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17 (1991); *see also* Rule 1:4(i) ("The mention in a pleading of an accompanying exhibit . . . makes such exhibit a part of the pleading.").

of the services offered by the SVWC, would cause more traffic on the easement leading to the

SVWC property.

Likewise, the second amended complaint pled facts supporting the reasonable inference

that the decision to retroactively approve the accessory structures located on the SVWC property

would lead to traffic on the easement. The second amended complaint alleged that the SVWC

uses the accessory structures to house injured animals during the rehabilitation process. Thus,

the SVWC relies on the accessory structures to operate at its present capacity.

The second amended complaint also pled facts fairly supporting the inference that the

accessory structures contribute, at least in some degree, to the amount of traffic that currently

uses the easement to access the SVWC. As the special use permit approving the accessory

structures will effectively allow the SVWC to operate at its current capacity, the facts asserted in

the pleading sufficiently raise the reasonable inference that the special use permit will ensure that

the traffic on the easement will, at a minimum, continue at its current rate.[3]

---

[3] We acknowledge that the appellees dispute the validity of these inferences. At the demurrer stage of the proceedings, however, the circuit court was required to draw all reasonable inferences arising from the factual allegations of the second amended complaint in favor of the appellants. *See, e.g.*, *Coward*, 295 Va. at 358. A plaintiff can survive a demurrer with well-pleaded allegations of standing, but it cannot succeed thereafter without proof of standing. Because the constraints of the standing doctrine "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As a "preliminary jurisdictional issue having no relation to the substantive merits of an action," *McClary v. Jenkins*, 299 Va. 216, 221 (2020) (quoting *Andrews v. American Health & Life Ins. Co.*, 236 Va. 221, 226 (1988)), standing may be resolved at an ore tenus hearing prior to trial. Nonetheless, when the "jurisdictional facts and the facts central to [the underlying] claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

10

The remaining allegations of the second amended complaint, if established at a pretrial ore tenus hearing or trial, are sufficient to show that the appellants have incurred several forms of "particularized" harm arising from the traffic on the easement. *See Friends of the Rappahannock*, 286 Va. at 48. The appellants have alleged that the traffic on the easement harms them in several ways.

The appellants claim that the traffic on the easement: (1) imposes additional maintenance costs, (2) poses a danger to the safety of those who use the easement (particularly Maver and Creasy's children), (3) creates dust, noise, and light pollution, and (4) lowers the value of Seymour2's property. Significantly, members of the general public have not been harmed by the traffic on the easement in a similar manner. Because the easement at issue traverses the appellants' properties, the appellants are uniquely affected by the conditions resulting from the traffic on the easement.

The additional maintenance costs arising from the traffic on the easement constitute a form of "particularized harm" that is "not suffered by the public generally." *See id.* (quoting *Virginia Marine Res. Comm'n,* 281 Va. at 687). The easement at issue in this case is a private easement that is not maintained by any governmental entity. Accordingly, the appellants bear the costs of maintaining the easement, not members of the general public.

Likewise, members of the general public are not put at risk by the additional danger posed by the traffic on the easement. The appellants have alleged that the increased amount of traffic on the easement poses a danger to Maver and Creasy's children when they walk to their school bus stop in the mornings and when they return to their home in the afternoons. Simply put, Maver and Creasy's children are the only individuals who are exposed to this danger. No other children use the easement at issue to get to and from school.

11

The dust, noise, and light pollution allegedly caused by the traffic on the easement also constitutes a form of particularized harm to the appellants. The appellants have alleged that they have been harmed by the dust, noise, and light pollution because their homes are located in close proximity to the easement at issue. Members of the general public who do not live near the easement are unaffected by these conditions.

We acknowledge that *Friends of the Rappahannock* involves similar allegations of harm. In *Friends of the Rappahannock*, a group of neighboring property owners challenged a locality's decision to permit sand and gravel mining on certain property fronting the Rappahannock River. *Id.* at 41. Among other things, the property owners argued that the operation of the sand and gravel mine would "increase noise, dust, and traffic from barges and commercial boats." *Id.* at 43. Two of the property owners alleged that they were concerned that "dust and particulate pollution" from the mine would affect the health of their asthmatic child. *Id.* Another property owner alleged that the mining activities on the nearby property would make it more difficult for her to find a tenant for her farmhouse. *Id.*

Although *Friends of the Rappahannock* may involve similar allegations, it is nevertheless distinguishable from the present case. Significantly, *Friends of the Rappahannock* involved more speculative allegations of harm. *See id.* at 42-43. The property owners in *Friends of the Rappahannock* asserted that the operation of the sand and gravel mine *may* result in the alleged forms of harm. *See id.* In contrast, the appellants in the present case have alleged that they have *already* been harmed by the traffic on the easement.

Generally, a plaintiff is not required to allege that it has already incurred "particularized" harm in order to satisfy the second prong of the *Friends of the Rappahannock* test. *See id.* at 49.

12

The second prong of the *Friends of the Rappahannock* test requires an "allegation of injury or *potential injury* not shared by the general public." *Id.* (emphasis added).

In this case, however, the appellants have alleged that they have already sustained several forms of harm. The appellants have alleged that they have incurred additional maintenance costs due to the increased amount of traffic on the easement (i.e., the costs associated with the purchase of more gravel for the easement). Furthermore, the appellants have alleged that Maver and Creasy's children have already been endangered by the traffic on the easement. Specifically, the second amended complaint explained that the children were almost hit by traffic on the easement on several occasions. Additionally, the appellants have alleged that they have been harmed by the dust, noise, and light pollution generated by the traffic on the easement.

*Friends of the Rappahannock* is further distinguished from the present case by the conditions that the locality placed on the special use permit. In *Friends of the Rappahannock*, the locality imposed several conditions that were designed to minimize any harm resulting from mining operations. *Id.* at 49-50. The locality imposed specific restrictions "regarding pollution, particulate matter, and noise." *Id.* at 50. The property owners, however, failed to "allege any facts to indicate that the conditions imposed by the [locality] would be inadequate to protect their property rights." *Id.*

Although the Board of Supervisors imposed several conditions on the special use permit at issue in this case, these conditions did not address the alleged harm created by the traffic on the easement. The conditions imposed by the Board of Supervisors attempted to reduce the visibility of the proposed raptor building. They did not address or attempt to mitigate the harm caused by the traffic on the easement.

In summary, we conclude that the circuit court erred when it sustained the appellees' demurrer to the second amended complaint. When viewed in the light most favorable to the appellants, the allegations of the second amended complaint are sufficient to satisfy the test for standing that is set forth in *Friends of the Rappahannock*.

## III. CONCLUSION

For the reasons stated, we will reverse the judgment of the circuit court and remand this case for further proceedings.

*Reversed and remanded.*