COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia

UNPUBLISHED

CONRAD BURKE

MEMORANDUM OPINION[*] BY
v.      Record No. 0911-23-3          JUDGE MARY GRACE O'BRIEN
SEPTEMBER 24, 2024

STANLEY YOUNG, ET AL.


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Richard C. Patterson, Judge

Danny Zemel (Alan Stuart Graf; John F. Preis; David Flores; The
Krudys Law Firm, PLC; University of Richmond School of Law;
David Flores Attorney at Law, PLC, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Ann-Marie White Rene,
Assistant Attorney General, on brief), for appellees.  Appellees
submitting on brief.


Conrad Burke appeals the court's order sustaining the defendants' demurrer and granting

their motion to dismiss.  He argues that the court erred by finding that he failed to adequately

plead claims for excessive force and unconstitutional conditions of confinement under the Eighth

Amendment of the United States Constitution.  He also argues that the court erred by concluding

that the defendants were shielded by qualified immunity.  Because we find that the court erred by

sustaining the demurrer and finding that the defendants were entitled to qualified immunity at

this stage in the litigation, we reverse and remand.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

When reviewing a circuit court's judgment sustaining a demurrer, "we consider as true the facts alleged in the [complaint] and the reasonable factual inferences that can be drawn from the facts alleged." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 527 (2023) (alteration in original) (quoting *Eubank v. Thomas*, 300 Va. 201, 206 (2021)). Under this standard, "we recite the alleged facts of this case as described in the [operative complaint]." *Morgan v. Bd. of Supervisors*, 302 Va. 46, 52 (2023).

Burke, an inmate at Pocahontas State Correctional Center in 2019, reported a grievance against corrections officer James Poore. In response to the grievance, Poore retaliated against Burke by claiming that Burke had covered his intercom, had extra clothing and food in his cell, and had sworn at a nurse. Poore also falsely claimed that, at 3:30 p.m. on February 22, 2019, Burke pushed his food tray out of his cell, spilling the contents on Poore. The allegation was later "dismissed as having no merit."

Around 4:15 p.m. on February 22, Poore and a nurse delivered medication to Burke in his cell without incident. But around 6:30 p.m., corrections officers Bobby Dye, David Smith, Jeremy Remines, Roger Hylton, and Robert Stine came to Burke's cell to place him in ambulatory restraints at warden Stanley Young's direction. Dye told Burke that Young had ordered the restraints because Burke had "allegedly misbehaved by pushing his dinner meal out [of] the tray slot." The officers told Burke that "he could 'do this the hard way' or he could 'cooperate and comply.'" Smith told Burke that if he refused to cooperate, the officers would "come in there and beat [his] ass." Burke did not resist.

The officers ordered Burke to remove his clothing but permitted him to leave his underwear on. They entered Burke's cell and shackled his hands and ankles together "in such a way that he was effectively 'hog-tied.'" The officers attached the ankle restraints to the wrist

- 2 -

restraints with a short chain that forced Burke "to bend over the entire time he was in restraints causing him extreme pain." The restraints did not allow Burke to straighten his back. A nurse checked the tightness of the restraints but did not ask if Burke was in pain.

Burke suffers from severe thoracic scoliosis, degenerative disc disease, and congenital hip dysplasia, and had been transferred to Pocahontas Correctional Center from a different correctional center so he could be housed in a special medical cell. Because of his conditions, Burke could not bend over without severe pain and could not balance himself while walking. Burke's medical cell included grab bars, a medical bed, a raised toilet, and a raised sink to accommodate his disability. The officers knew of Burke's disability from his medical records and because Burke was confined in a medical cell "specifically designed to accommodate his particular disability."

The officers left Burke shackled in his cell wearing nothing but his underwear for approximately 21 hours. Burke fell at one point and could not get up, so he remained on the floor. No one physically checked on Burke while he was restrained, other than a "brief visit" from an officer the next morning.[1] Burke could not eat or use the restroom, and the position in which he was restrained exacerbated his medical conditions. Corrections officers returned to Burke's cell and removed the restraints at around 3:30 p.m. the following day.

Burke sued Young and the other correctional officers under 42 U.S.C. § 1983. Burke's second amended complaint alleged that they had used excessive force and subjected him to unconstitutional conditions of confinement, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants demurred and moved to dismiss based on qualified immunity. After a hearing, the court sustained the demurrer and granted the

---

[1] Burke does not name this officer as a defendant and does not allege that this officer took any actions to assist Burke or check on his welfare. Burke only alleges that the officer "reported to [Burke] that night shift had told him that [Burke] had behaved well."

- 3 -

motion to dismiss. The court found that Burke had failed to adequately plead any constitutional violations and had not pled sufficient facts to overcome qualified immunity because the use of ambulatory restraints did not violate clearly established law.

ANALYSIS

"The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (alteration in original) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). Whether the factual allegations sufficiently establish a cause of action is a question of law we review de novo. *Id.* We also review de novo "whether an officer is entitled to immunity" at the stage in the litigation in which it is asserted. *Cromartie v. Billings*, 298 Va. 284, 296 (2020).

On review of a demurrer, we "accept as true all factual allegations expressly [pled] in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Taylor*, 301 Va. at 357 (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.*

I. The court erred by sustaining the demurrer to Burke's excessive force claim.

A claim of excessive force in violation of the Eighth Amendment has "both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). The objective component of an excessive force claim requires us to examine whether the force employed "was sufficiently serious to establish a cause of action," which is anything above "de minimis or trivial force." *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). "So long as the force used is more than de minimis, the objective component is satisfied, regardless of the extent of the injury." *Id.* at 303.

- 4 -

Under the subjective component of an excessive force claim, we ask "whether the officers acted with a 'sufficiently culpable state of mind.'" *Id.* at 302 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "The crucial question under the Eighth Amendment's subjective component is one of motive: whether the officer acted 'in a good faith effort' to protect safety or maintain discipline, or 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 308 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). An officer acts in good faith when he is "motivated by an 'immediate risk[] to physical safety' or threat to prison order." *Id.* at 302 (alteration in original) (quoting *Brooks*, 924 F.3d at 113). But he acts impermissibly when he "inflict[s] pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct." *Id.*

Burke's allegations satisfy the objective component of an excessive force claim. Burke alleges that he was restrained "in such a way that he was effectively 'hog-tied'" and that the officers used a short chain that "forced [Burke] to bend over" for approximately 21 hours "causing him extreme pain" because of his disability. Burke pleads that he "sustained serious physical and mental injuries," including a worsening of his medical conditions. Accepting Burke's allegations as true, as we must on a review of a demurrer, the manner and length of time in which the restraints were employed on Burke—a disabled inmate—constituted more than "de minimis or trivial force." *Dean*, 984 F.3d at 302. The defendants rely on several federal district court cases holding that the prolonged use of ambulatory restraints was permissible. These cases, however, do not address the prolonged restraint of prisoners with physical disabilities, where improper restraint could cause significant harm. "[I]t is the force itself that is the focus of the objective component," and Burke's disability contextualizes the severity of the force employed. *Id.* at 303.

Further, when granting Burke all reasonable inferences arising from the facts alleged, Burke's allegations also satisfy the subjective component of an excessive force claim. *Taylor*, 301

Va. at 357 ("[W]e draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor."). Burke specifically alleges that the restraining officers told him that Young had ordered the restraints as a punishment for prior conduct against Poore, and thereby alleges that the officers inflicted pain "not to protect safety or prison discipline but to punish or retaliate" against him "for his prior conduct." *Dean*, 984 F.3d at 302. Burke claims that he was compliant and peaceful for several hours between the alleged prior conduct and when the officers put him in restraints; indeed, in the intervening time he was given medicine by a nurse and an officer without incident. He obeyed the officers' orders when they arrived to put him in restraints and did not otherwise cause disorder. "[T]he use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of" an "impermissible motive." *Id.* (quoting *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017)); *see also Whitley*, 475 U.S. at 321 (providing that courts evaluating Eighth Amendment excessive force claims may consider, among other direct and circumstantial evidence, (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them"; and (4) "any efforts made to temper the severity of a forceful response").

Further, the manner in which Burke alleges that he was restrained permits a reasonable inference, at the pleading stage, that the officers acted "maliciously and sadistically for the very purpose of causing harm," and not with a "'good faith effort' to protect safety or maintain discipline." *Dean*, 984 F.3d at 308 (quoting *Whitley*, 475 U.S. at 320-21). For no "evidently necessary" penological reason, Burke was told to strip down to his underwear and remained in that state the entire 21 hours he was restrained. *Id.* at 304. Burke also specifically pleads that the officers were aware of his medical conditions and disability yet restrained him in a position that would cause him great pain.

When reviewed in their totality, these allegations are sufficient to establish a cognizable claim for excessive force. Although the defendants argue that Burke's allegations are "refuted by the video footage," it is well-established that on review of a demurrer we must consider the allegations in the complaint as true; our inquiry does not test the "strength of proof," but the "legal sufficiency" of the facts alleged. *Taylor*, 301 Va. at 357 (quoting *Coutlakis*, 293 Va. at 216). Courts do not "evaluate and decide the merits of the allegations set forth in a . . . complaint" on demurrer. *Id.* (alteration in original) (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 427 (2000)). In this case, Burke plausibly alleges that he was subjected both to more than de minimis force and that the force was employed for an impermissible purpose.

## II. The court erred by sustaining the demurrer to Burke's unconstitutional conditions of confinement claim.

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). The Eighth Amendment prohibits conditions of confinement that are "sufficiently serious to deprive a prisoner of minimal civilized necessities." *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022).

Like a claim for excessive force, a claim that a prisoner was subjected to unconstitutional conditions of confinement has an objective and a subjective component. To establish unconstitutional conditions of confinement, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)). "The first prong is objective and requires that the deprivation be 'sufficiently serious'; the second requires us to determine whether subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (alteration in original) (quoting *Wilson v. Seiter*, 501

- 7 -

U.S. 294, 298 (1991)). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Burke has alleged an objectively serious deprivation. "To be 'sufficiently serious,' the deprivation must be 'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of serious harm resulting from . . . exposure to the challenged conditions.'" *Rivera v. Mathena*, 795 F.App'x 169, 174 (4th Cir. 2019) (per curiam) (alteration in original) (quoting *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019)). Burke claims that he was forced into a cramped position and left on a cold floor for several hours. He was not provided food, water, or an opportunity to use the toilet for approximately 21 hours. Additionally, as Burke argues, his "vulnerable medical condition" is relevant to the circumstances of his treatment. Burke alleges that the restraining officers and Young knew that Burke could not "bend over without extreme pain," could not balance himself while walking, and that he was housed in a medical cell with special accommodations for his disability; and yet, the officers placed him in a stress position where he was forced to bend over and left him in that position for 21 hours.

Burke cites *Thomas v. Younce*, 604 F.App'x 325 (4th Cir. 2015) (per curiam), to support his argument that he alleged a sufficiently serious deprivation. In *Thomas*, the Fourth Circuit found that a prisoner had adequately pled a claim for unconstitutional conditions of confinement where prison officials "ignored a doctor's order directing that [the prisoner] be assigned to a bottom bunk" resulting in injury. *Id.* at 325, 327. Considering the prisoner's medical condition and legitimate need for accommodations, the Fourth Circuit reasoned that the allegations were sufficient to show that prison officials "exhibited deliberate indifference to a substantial risk of serious harm." *Id.* at 326-27. Likewise, while the use of ambulatory restraints may not be a sufficiently serious deprivation on its face, a specific prisoner's legitimate medical needs may cast the use in a different

light.  In other words, we must also consider Burke's medical condition when assessing whether he alleged a sufficiently serious deprivation.

Additionally, Burke has adequately pled that the officers knew of and disregarded an excessive risk to his health and safety.  *Farmer*, 511 U.S. at 837.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017) (alteration in original) (quoting *Farmer*, 511 U.S. at 837).  "In addition, the prison official must 'consciously disregard' that known risk of serious harm."  *Id.* (quoting *Farmer*, 511 U.S. at 839).  "An accidental or inadvertent response to a known risk is insufficient to create Eighth Amendment liability."  *Id.*

> In sum, the "deliberate indifference" defined by *Farmer* may be characterized by three components: (1) the subjective knowledge of a substantial risk of serious harm; (2) the conscious disregard of that risk; and (3) the absence of intent to cause the harm risked.  More concisely, *Farmer* defines deliberate indifference as the intentional taking of a risk that the defendant knows might cause harm while lacking any intent to cause such harm.

*Id.* at 545.

Again, key to this inquiry is Burke's allegation that the officers knew of Burke's medical condition, evincing their "subjective knowledge of a substantial risk of serious harm" and "conscious disregard of that risk."  *Id.*  Although, generally, the use of ambulatory restraints may not pose excessive risks to a non-disabled inmate, Burke claims the officers were aware of his disability and restrained him in a way that was uniquely harmful to someone with Burke's condition, and then the officers failed to ensure his well-being for 21 hours.  Indeed, Burke specifically alleges that he was in a medical cell containing specialized equipment designed to accommodate mobility issues.  Restraining a prisoner who suffers a mobility disability in such a

way as Burke claims he was restrained significantly, and obviously, heightens the risk of harm. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Burke's allegations permit a reasonable inference that the officers were subjectively aware that restraining Burke in such a manner posed a substantial risk of serious harm to Burke's health and safety and consciously disregarded that risk. *See Taylor*, 301 Va. at 357; *see also Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .").

III. The court erred by finding that the defendants were entitled to qualified immunity at this stage of the litigation.

"Under the doctrine of qualified immunity, 'a corrections officer who "has violated a prisoner's constitutional right" is "shielded from liability . . . if an objectively reasonable officer could have believed that his actions were lawful in light of clearly established law."'" *Dean*, 984 F.3d at 309 (alteration in original) (quoting *Brooks*, 924 F.3d at 118). The defendants argue, and the court below found, that the appropriate inquiry is "whether ambulatory restraints, improperly applied or not, have been held to be unconstitutional." However, the inquiry is not whether ambulatory restraints are unconstitutional, but whether the officers acted with an impermissible state of mind.

Claims for excessive force and unconstitutional conditions of confinement hinge on an officer's mental state. *See id.* at 310 (noting that Eighth Amendment claims are "unusual" in a qualified immunity context because courts must consider "a constitutional violation that has 'wrongful intent' as an element" and that "liability turns not on the particular factual circumstances under which the officer acted . . . but on whether the officer acts with a culpable state of mind"). Accordingly, the Fourth Circuit has largely collapsed the subjective intent component of an Eighth Amendment claim and a qualified immunity analysis into a single inquiry because an officer "could

not believe that [their] actions comported with clearly established law while also believing that there is an excessive risk to the plaintiffs and failing to adequately respond to that risk," or by employing excessive force with a prohibited motive. *Thorpe*, 37 F.4th at 939 (alteration in original) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001)); *Dean*, 984 F.3d at 310 (finding that it is clearly established law "that inmates have a right to be free from pain inflicted maliciously and in order to cause harm, rather than in a good-faith effort to protect officer safety or prison order"). Thus, "'[a plaintiff who has] made a showing sufficient to' demonstrate an intentional violation of the Eighth Amendment," has "also made a showing sufficient to overcome any claim to qualified immunity" on a motion to dismiss, and "the two inquiries effectively collapse into one." *Thorpe*, 37 F.4th at 934 (first quoting *Beers-Capitol*, 256 F.3d at 142 n.15; and then quoting *Delgado-Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir. 1996)). "Dismissal, in other words, remains improper so long as the officers' mental state remains genuinely in issue." *Id.*

We follow the Fourth Circuit's approach. It is axiomatic that an officer cannot reasonably believe that he is acting in conformity with the law when his actions are unlawfully motivated and taken in bad faith. *See id.* ("As the familiar refrain goes, qualified immunity does not shield 'those who knowingly violate the law.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))); *see also Dean*, 984 F.3d at 310 ("[B]ecause an officer necessarily will be familiar with his own mental state, he 'reasonably should know' that he is violating the law if he acts with a prohibited motive." (quoting *Brooks*, 924 F.3d at 119)). Thus, because Burke has adequately pled that the officers acted with a "wrongful and punitive motive, then they violated clearly established Eighth Amendment law" and are not entitled to qualified immunity at the pleadings stage of the litigation. *Dean*, 984 F.3d at 310.

We note, however, that this ruling does not foreclose the defendants from raising this defense again at a different stage of the litigation. *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 526

(1985) ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."); *Ray v. Roane*, 93 F.4th 651, 657 (4th Cir. 2024) ("[T]he fact that a plaintiff's complaint survived a motion to dismiss does not mean that summary judgment is foreclosed."). At this juncture, our inquiry is limited to the "legal sufficiency of the facts alleged in [the] pleadings, not the strength of proof." *Taylor*, 301 Va. at 357. If discovery produces facts substantially different from what Burke alleges in his complaint, "then notwithstanding our decision . . . summary judgment could well be available." *Ray*, 93 F.4th at 657.

CONCLUSION

Because we find that Burke has adequately pled claims for excessive force and unconstitutional conditions of confinement, and, as such, the defendants are not entitled to qualified immunity at this stage, we reverse the court's judgment sustaining the demurrer and remand this case for further proceedings.

*Reversed and remanded.*